Good morning, Your Honors. May it please the Court, my name is Jeffrey Martins and I'm representing the Petitioner. Could you speak a little louder? I'm representing the Petitioner. My name is Jeffrey Martins and I'm representing the Petitioner, Mr. Surinder Singh. The IJA based her denial of Mr. Singh's request for asylum based on an adverse credibility finding. And when finding Mr. Singh not credible, the judge cited many different grounds, and I hope to cover as many of those as I can this morning. But none of these grounds are in the record. And several of them, in addition to that, are immaterial and don't go to the heart of his claim for asylum. I'd like to begin by highlighting some of the most glaring problems with the immigration judge's decision, which I think really demonstrate its... I'm having trouble hearing you, sir. Could you speak up a little bit louder? Sure. I'd like to begin by highlighting some of the most glaring problems of the judge's decision, which I think really demonstrate its unfairness and its clearly erroneous nature. For example, the immigration judge stated that Mr. Singh was not credible based on his inability to name the five Ks of the Sikh faith. In fact, she stated that he was asked this question on more than one occasion, when in actuality he was never asked this question. The judge stated that Mr. Singh was not credible because he could not explain the differences between the different types of Sikhs or what his division of the Sikh religion believes. Mr. Singh was never asked either of these questions either. I think it's clearly error to deny asylum based on an inability to answer questions that were never asked. In perhaps one of the most baffling parts of the judge's decision, she stated that Mr. Singh had to be asked several times by his own attorney whether he would have been charged with a crime in 1984, and there were no questions at all to Mr. Singh about any crime in 1984, whether he committed a crime or whether he would have been charged with a crime. It almost seems at this point that the judge is listening to a completely different hearing than what is actually contained in the record. What about the one-year error in one of the arrests? How do we decide whether that's significant or insignificant? Because it can be significant. For example, if I were a witness to, God forbid, your family being murdered or something, and you got it off by a year, I think a lot of people would say that's not the type of thing you would likely forget. Yes, Your Honor, I appreciate that. And certainly that has potential to have some significance, and I think that is perhaps the only actual discrepancy that exists in the entire record, even though the judge cited many, many different grounds. But the judge never cited that particular discrepancy. She said that there were different dates and years that were in his testimony compared to his asylum statement, but she never cited that or explained what she meant by that, so there's no real way for the court to tell whether or not that was the actual basis of her adverse credibility finding. What about the I don't know who you are? I'm not sure you even are who you say you are because he only has an expired license, right? Right. And I guess what I know that we have Ninth Circuit cases that talk about when that can be speculative and not, but I'm trying to look at it broadly in the sense if you think like every day you hear cases and you know the type of evidence that people present as to their identity, and he only had a, you know, an expired driver's license, and the story that he told about why he didn't have a birth certificate could seem a little bit questionable. Yeah. The judge certainly suggested that in her adverse credibility finding that his testimony about the absence of the birth certificate was vague, but I don't think the record really supports that. The questions that he was put to him about his birth certificate were themselves vague, I think, and the judge gives no real explanation for why she rejects that testimony other than to say that it's simply not believable. In her decision, there's no consideration at all of the driver's license. What if someone said I can't present a birth certificate because they're Martians working there, all right, and that's clearly, that just doesn't seem like a good reason, and would I be able to from that say, you know, that's not really a good reason why you can't present me with a birth certificate. So at what point does it, what point is it not speculation and say when you listen to these cases every day and a lot of people present birth certificates, at what point does it, you know, what does it move from not speculation to not a good reason and possibly hiding your identity? Well, that's a very good question, Your Honor, and I don't know if I can really address the Martian scenario, but I think that. Well, that obviously I think would be a pretty good reason to say I don't know who you are. That's not a good reason. Right. I mean, I think that I could conclude that. Yes, and if Mr. Singh had testified that way, I think it would be legitimate for the judge to find that she was not credible. The problem, I think, with the judge's decision regarding his identity is that she doesn't explain why she rejects the testimony about the absence of his birth certificate. Well, it's even more than that because she said you didn't give me any reason, which was untrue on its face because he didn't give a reason. He said I sent it in to get my passport. They never returned it, and I wasn't able to get a new one. Yes. So when she says you didn't tell me why, that's on its face incorrect. Yes, Your Honor, and that goes to, I think, my larger point, that almost every ground that the judge cited is not in the record for finding Mr. Singh not credible. If we were to agree with you. Sure. If we were to agree with you and said that the adverse credibility, and I'm just giving you a hypothetical right now, were not supported by the evidence, would it have to go back for the IJ to make a particularized finding as to your client relative to country conditions? Yes, I think that would be the appropriate. We couldn't make that determination here? No, that's a matter of first impression, and there was no ruling based on that by either the judge or the board. The judge did state that Mr. Singh was, his testimony was inconsistent with country conditions, and the board kind of went a step further and said that they agree that with the judge's decision that his claim is unsupported by country conditions, but there's no finding of whether or not in the alternative if he was found to be credible. What the answer would be, and that's a Ventura-type remand because we can't decide that in the first instance. Yes, Your Honor. Another example of the judge's, I think, the lack of support in the record for the judge's decision was, and I think one of the most demonstrative of the IJ's determination to find Mr. Singh not credible despite the record is regarding whether or not he attended meetings as a village council member at a time when he was not, and it was after 1993. The IJ herself stated that this inconsistency stood out in the Court's mind. I'm sorry. Did I understand you to say that if we find that the adverse credibility finding is unsubstantiated in the record, we should remand to the Board of Immigration Appeals to have a Ventura hearing to reconsider the evidence, and because they didn't make a finding on changed country conditions? Well, the board, I think, the board adopted and affirmed the IJ's decision under manner of bravado. They did make an additional comment after that adoption of the judge's decision, stating that they agreed with the country conditions analysis of the judge, but they changed the analysis of the judge's decision slightly. Well, here I find that moreover, even assuming the Respondent's credibility, the record supports the immigration judge's finding that conditions for Sikhs in the Punjab region of India have improved dramatically. That's not a sufficient finding of changed country conditions? Well, that's not what the judge found. Well, there's also the issue of whether it's sufficiently individualized analysis, because our prior cases have required that country conditions be tied to a particular individual. Yes, and certainly the board didn't do that. In addition, I think the record, when the Court looks at the country conditions that are in there, doesn't show that Mr. Singh's claim is unfounded. There were plenty of reports in there about the leader of his political party being arrested and detained for expressing his political views about police abuses. There's an Amnesty International report that states abuses continue to occur in the Punjab, despite the end of the militancy period. So even if I think the Court considers whether or not a presumption of a well-found affair has been rebutted, the Court, the record doesn't support that. Did you want to save your last minute or so for rebuttal? Yes, that would be great. Thank you, Your Honor. I will. Please support. Tim Randis on behalf of the United States Attorney General, Eric H. Holder, Jr. In this case — What is your best argument for these inconsistencies? Gladly. In this record, there's substantial evidence to support the immigration judge's adverse credibility determination. Not only was the petitioner's testimony vague on the critical aspects of his claim, including his political affiliations with the Akali Dalman political party. He never sufficiently ever described his political affiliations. He also was vague regarding his Sikh religion. That was the other critical part of his claim. He also was inconsistent, as the Court pointed out. But when he gave what you typify as vague responses to the pillars of the Sikh religion, was he told that those answers were vague, and was he given an — why they were vague and given an opportunity to correct them or to make them more substantial? On direct testimony, he was asked by his own counsel what it meant to be a Sikh, and he claimed he was an Ajahara Sikh. Can we get back to my question? Yes. Did the immigration judge say, Mr. Singh, I find your questions to be — I mean, your answers to be vague and imprecise in this particular, and therefore would you like to supplement them or correct them? The immigration judge did not question him about his Sikh religion, but on cross-examination, counsel for DHS did. He asked him about the 5Ks, which were previously mentioned. So you've told me what he did on direct. You've told me what he did on cross-examination. Can you point to any portion of the record where the immigration judge told the Petitioner that the responses he was given were vague, and could he — did he want to supplement them or correct them? The immigration judge did not specifically address his vagueness. There's some aspects in which there seem to be a series of mistakes, in my opinion. I'm speaking only for myself here, at least on the part of the immigration judge, whose opinion the BIA adopted whole. One of those, Judge Baya has already mentioned, but it seems to me very important also that the IJ relied on the country conditions report as a whole as a basis to cast doubt on credibility without making any effort to tie those two things together. And our case law says you can't do that. The other one that seemed very odd to me is this one about the birth certificate, where the IJ says in so many words, you did not give me a reason, when in fact there was a very coherent, complete reason given and not addressed at all by the IJ. I just — it seems very problematic to me to rely on this IJ opinion. The immigration judge's decision is not without problems. However, there is enough in his decision to constitute substantial evidence to affirm this adverse credibility determination regarding the birth certificate. The immigration judge did not find his explanations sufficient. He did give an explanation in the record. However, it was very confusing and nonresponsive or vague, like many of his other responses. The IJ said, in so many words, quote, he could not articulate a reason why, end quote. But he did articulate a reason why. Well, I believe it in transcripts reflects that you stated, asked, do you have a birth certificate? And he said, no, I never took it from school. I got it when I got my passport. They said, so do you have a birth certificate then? He said, a little I had. They took it when I got a passport. Right. So he sent it in to get a passport. And he later says that he couldn't get another one, I think, on page 126 of the transcript. That's right. And whether — I guess the IJ didn't come to terms with the explanation, just said, you didn't give me an explanation. But there was a complete, coherent explanation. And if the IJ disbelieved it, we don't know why, because they claimed there was no reason. I guess it just seems so utterly problematic to me. There are so many problems with this IJ opinion. Well, you also have the problem with Tower v. Ashcroft, where, you know, that we also have to deal with our own precedent in terms of, in that situation, I think the alien put the passport into evidence, and the rectangular signature block in the passport covered up the official printing. And one reason that the IJ gave in that case was on the adverse credibility. It is implausible to believe that the government of India would be so careless and sloppy in issuing a passport as to paste over official parts of the government-issued passport. And this Court, you know, albeit whether I like it or not, I have to follow the precedent of this Court, said that reason would not support an adverse credibility finding. And it was based on the IJ's personal conjecture about the manner in which the Indian passport officials carry out their duties. Now, if that's conjecture, it seems that this would be conjecture in the facts of this case, because I think the facts of this case, really the reason does seem more logical than, you know. I would say that the other one, maybe had I been sitting on that case, I would say, well, that does seem kind of stupid that you'd issue a passport and then cover everything up. Well, the Court also has precedent stating that if there is one supported instance of an inconsistency in the record, you can affirm on that ground. If it goes to the heart of the claim. If it goes to the heart of the claim. As we discussed earlier, there is at least one inconsistency. There's the arrest date and year of his fourth arrest, which three times in direct testimony stated was 1999. And we also have cases that say that a minor discrepancy in a date and it doesn't advance your claim by making something seem more dramatic than it was. That's true as well. It does not go to the heart of a claim. And in this case, it's not just the inconsistency, though. There's the entirely, utterly vague testimony regarding the Sikh religion, which we discussed but was not addressed by the immigration judge personally, but by DHS on cross-examination. And also his vagueness discussing his political affiliations. This was a petition that claimed he grew up in a family where his father was a lifelong, fervent advocate of the Kali Dalman party. Also, he claimed he was a sarpanch and then a village sarpanch later on, elected positions advocating for Sikh rights. And he also claims his wife was elected to a political position in 1988, I believe. This is someone who was very politically active according to his own testimony, but yet when asked to describe his political tenets, all he could say was, we were pursuing our rights. He was also asked by the immigration judge to further explain that testimony. He was generally not a very articulate person, but even non-articulate people can be politically active. Well, this has been a claim to be very politically active, though. And he was non-articulate and couldn't express any of his political views. And the standard of review is asked to compel a contrary conclusion. The immigration judge was justified in hearing this testimony and finding it not to be credible. I would like you to assume for the purpose of this question that we're not persuaded that there's substantial evidence in support of the adverse credibility finding. What flows from that? Wouldn't we have to remand it for a Ventura remand to take another look at the case from that perspective on all three of the claims, asylum, withholding, and can't? Yes. Under Ventura, you'd have to remand for a past persecution determination, a well-timed fear of persecution determination, determination whether you're warranted asylum as a matter of discretion. All three of those have not been addressed yet by the immigration judge. Okay. But besides the vagueness and also the Sikh religion, he was asked in cross-examination whether or not he could explain the 5Ks. And he said he had a non-responsive answer why he did not display the 5Ks of traditional Sikh displays. He said, because my parents are baptized, which doesn't seem to make any sense. And as Petitioner's brief notes on page 26, a baptized Sikh is more likely to display the 5Ks of a traditional Sikh. Is your theory that it's all of them together or that there's one that you would stand alone? What is your stand-alone strongest argument? Well, it's all together, but stand-alone. So are you conceding that we isolate them if they're not enough, if they were each just one? Yes. Petitioner's respondent argues you should not isolate any particular part of his decision. It's a substantial evidence of the entire record of what the immigration judge relied on. All right. But do you have one of all of those that you would say standing alone is enough? I'd say the vagueness of it could not describe any of his political affiliations or tenets for someone who claims his entire family was extremely politically active. Furthermore, there was the fourth arrest year, which he inconsistently stated three times over and which was stated in his corroborating document from his father and his asylum application as occurring in the year 2000, and he three times over stated in testimony in 1999. And when asked why he three times stated incorrectly, he just stated, I made a mistake. And it was just inconsistent with his documentation. Well, it would be better, say, if his family had been murdered and got the date wrong, right? Would you, I mean, it wasn't, it was what, one of four arrests? One of four arrests, but in each arrest he said he was beaten severely. And that was another problem with his testimony. He was vague regarding his beatings and his attentions. Each time he stated he was beaten severely, I believe he got more specific on a couple of the arrests. He said in the third arrest. But I guess, you know, if you say you're beaten severely, if the IJ wants more, did the IJ ask for more at that point? At that point, these are taken from direct testimony, yes. But to go along with that analogy, just someone who suffered more persecution. What about the yellow headdress? The yellow headdress is just something that when you look at the transcript, it does appear that it could be a statement that's not mutually exclusive, that he states at one time it's fashionable and then it was also political. And as Petitioner points out in his brief, that is something that could be interpreted as not mutually exclusive and his inconsistency is not supported by the record. But you would not rely on that? I would not rely on that inconsistency. As I conceded before, there are problems with the immigration judge's decision. However, Petitioner's testimony was very vague and nonresponsive. The only thing I can say to you when you go through is the transcript of record. As we talked about before with the birth certificate, I read it as initially stating in the transcript that I got my passport when I went to school. And later on he says, I gave it up and I got my passport. Then he says in the next line, I got it when I got my passport. But the IJ says none of that. The IJ does not say that, but he says I did not find him to explain himself. No, he said he didn't explain himself. But anyway, you've exceeded your time. I'm sorry. We appreciate your argument, and I believe we understand your position. Thank you, Your Honor. Thank you. Mr. Martins, I think you have a minute or so left. Thank you. And I just have a couple of things that I'd like to follow up on. First, I'd like to address counsel's assertion that Mr. Singh was vague about his political opinions, because I don't believe that the record reflects that. He, when asked what the Khaled Amman believes, said that they are interested in Khalistan, an independent Sikh state. Throughout the hearing, he also discussed about their grievances regarding water and power distribution. He talked about the unfair arrests that they had protests over and the mistreatment of Sikhs and other political issues. I just don't think the record supports that kind of an assertion. In addition, I think the problem with the judge's decision in terms of finding Mr. Singh not credible based on the vagueness of his testimony is that in many instances she just didn't ask any kind of follow-up question for more detail. Regarding the beatings, there was only one instance where he was ever asked to explain what he meant when he said that he was kicked like a donkey. In every other instance when he stated that he was beaten or beaten with sticks or kicked, there were no follow-up questions at all to say could you explain that, could you describe that in more detail. And I think that is the fundamental error of the finding with the vagueness. And the other issues are simply not supported by the record. So I think that I would urge the Court to remand this case so that it could be fairly and accurately considered in light of his credible testimony. Thank you. Thank you, counsel. The case just argued is submitted and we appreciate the efforts and arguments of both counsel.
judges: Graber, Callahan, Bea